PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 97-8423

---

D.C. Docket No. 5:96-CV-316-3

KENNETH W. LEE,

Plaintiff-Appellant,

versus

ROBERT C. HUGHES, JR.;
DANIEL C. LANFORD, JR.,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Middle District of Georgia

---

**(July 9, 1998)**

Before CARNES, Circuit Judge, KRAVITCH, Senior Circuit Judge, and
MILLS*, Senior District Judge.

---

*Honorable Richard Mills, Senior U.S. District Judge for the
Central District of Illinois, sitting by designation.

KRAVITCH, Senior Circuit Judge:

In this case, we must decide whether a federal employee who is not afforded an administrative or judicial remedy under the Civil Service Reform Act of 1978 (codified and amended in various sections of 5 U.S.C.) ("CSRA" or "the Act") can bring a federal claim under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S. Ct. 1999 (1971), in order to recover monetary damages for alleged constitutional violations, and whether § 1981 provides a cause of action against individuals acting under color of federal law. We answer both questions in the negative.

I.

Kenneth W. Lee ("Lee" or "plaintiff") was hired as a U.S. Probation Officer for the Middle District of Georgia in 1983 and served in that capacity until his employment was terminated in 1996. At the time of Lee's termination, Daniel Lanford ("Lanford") was the Chief U.S. Probation Officer for the district, and Robert Hughes ("Hughes") was the Deputy Chief U.S. Probation Officer. Lee protested his termination on the ground that it was improperly motivated by race and sought redress through the Equal Employment Opportunity ("EEO") Plan for the Middle District of Georgia.[1]

A complainant seeking to initiate an action under the EEO Plan

---

[1] The EEO Plan adopted by the Middle District of Georgia is identical to the EEO plan that had been considered and approved by the Judicial Conference of the United States.

must file a timely discrimination complaint with the EEO Coordinator, who then makes the necessary investigation, consults with the parties, and prepares a report "identifying the issues, describing his or her findings and recommendations, explaining what resolution, if any, was achieved, and defining what corrective actions, if any, will be undertaken."[2] If the complainant objects to the rejection or cancellation of the complaint, he may request that the Chief Judge of the district review the matter. The Chief Judge then must:

> a. Conduct any additional investigation which he or she deems necessary;
> b. Determine whether to interview the parties or other persons;
> c. Determine whether to hold a formal hearing on the matter; and
> d. Issue a final decision on the rejection, cancellation, or merits of the complaint if it is found that no interviews or hearings are necessary.[3]

A magistrate judge was appointed to investigate Lee's

---

[2] EEO Plan at 2.

[3] EEO Plan at 3. The EEO Plan does not provide for a hearing upon request of the complainant, and the record does not suggest that plaintiff here requested a formal hearing subsequent to the Chief Judge's final decision in this case. In fact, it appears that plaintiff's attorney, in a letter sent to the Chief Judge that stated objections to Lee's potential termination, only suggested that a formal hearing would be appropriate at some future date. See Letter of March 14, 1996 ("I will be present at your court this afternoon and if some resolution cannot be had prior to the informal hearing scheduled for 1:30 p.m., then I would move the court to continue said matter to a date after the responses have been filed by the parties with the Probation Department, against whom the complaints will have been made. At that time, a formal hearing would be appropriate.").

3

allegations and subsequently recommended approval of Lee's termination. The Chief Judge of the district accepted the report and approved the termination. Lee then filed suit in district court against his supervisors in their individual capacities asserting a Bivens claim for alleged racial discrimination and alleging a violation of § 1981.

The district court dismissed the Bivens claim for lack of subject matter jurisdiction. Specifically, the court held that the CSRA is the exclusive vehicle through which federal employees can challenge or remedy adverse personnel decisions, even under circumstances in which the CSRA does not provide for administrative or judicial review of the personnel decision at issue. In the alternative, the district court dismissed both claims for failure to state a claim upon which relief could be granted. Lee appeals the dismissal of both claims.

II.

Lee contends that the district court erred in dismissing his Bivens claim, because he otherwise will not be afforded a judicial remedy for the alleged discrimination. Defendants, on the other hand, argue that Congress intended for the CSRA to be the exclusive vehicle through which federal employees can challenge adverse personnel decisions and that, as such, the CSRA precludes plaintiff's Bivens claim for damages. We review de novo the

4

district court's decision to dismiss plaintiff's <u>Bivens</u> claim.  <u>See</u> <u>McKusick v. City of Melbourne</u>, 96 F.3d 478, 482 (11th Cir. 1996).

The CSRA "comprehensively overhauled the civil service system," <u>Lindahl v. Office of Personal Management</u>, 470 U.S. 768, 773, 105 S. Ct. 1620, 1624 (1985), and created an elaborate "new framework for evaluating adverse personnel actions against [federal employees]," <u>id.</u> at 774, 103 S. Ct. at 1624.  The CSRA details the protections and remedies available to federal employees in such actions, including the availability of administrative and judicial review.   <u>See</u> <u>United States v. Fausto</u>, 484 U.S. 439, 108 S. Ct. 668 (1988).   The CSRA divides civil service employees into three main classifications, <u>see</u> 5 U.S.C. §§ 3132, 2102, 2103; <u>Fausto</u>, 484 U.S. at 441 n.1, 108 S. Ct. at 670 n.1, within which employees are further classified as preference-eligible or nonpreference-eligible, <u>see</u> 5 U.S.C. § 2108.  Specific protections and remedies available under the CSRA are dependent upon the civil service employee's classification within the Act.  <u>See</u>, <u>e.g.</u>, 5 U.S.C. § 7511; <u>see</u> <u>generally</u> <u>Fausto</u>, 484 U.S. at 445-49, 108 S. Ct. 672-75 (discussing various chapters within the CSRA and the protections provided therein).  The parties do not dispute that Lee is a preference-eligible member of the excepted service and, as such, did not have the right to file a petition with the Office of Special Counsel ("OSC") of the Merit Systems Protection Board ("MSPB").  Although the remedies provided in the EEO Plan were

5

available to Lee, the CSRA did not provide him with judicial or administrative review of the adverse personnel action alleged.

In Fausto, the Supreme Court considered whether the CSRA precluded judicial review under the Tucker Act, 28 U.S.C. § 1491, for nonpreference-eligible members of the excepted service who, under the CSRA, were not afforded administrative or judicial review of suspension for misconduct. After examining the purpose of the CSRA, the entirety of the text, and the structure of review established by the Act, the Court held that the "CSRA established a comprehensive system for reviewing personnel action taken against federal employees," id. at 454, 108 S. Ct. at 677, and that Congress deliberately excluded certain employees from the provision establishing administrative and judicial review for adverse personnel actions. Although the Fausto Court specifically was considering the remedies afforded under the CSRA in the context of nonpreference-eligible members of the excepted service, this court has held that "Fausto applies to preference-eligible as well as non-preference employees." Stephens v. Dept. of Health and Human Servs., 901 F.2d 1571, 1575 (11th Cir.) (holding that CSRA precluded Bivens claim for damages for allegedly prohibited personnel practice where, under the CSRA, the OSC refused to petition MSPB with plaintiff's complaint), cert. denied, 498 U.S. 998 (1990). Most notably, this court has recognized Fausto as "emphatically and conclusively establish[ing] the preemptive nature of the CSRA."

6

Id.

In <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 396, 91 S. Ct. 1999, 2005 (1971), the Supreme Court held that a plaintiff could state a cause of action and recover money damages against a federal official for constitutional violations occurring under the color of federal law. "A <u>Bivens</u> action is only permitted where 1) the petitioner has no alternative means of obtaining redress, and 2) there are no 'special factors counseling hesitation.'" <u>Stephens</u>, 901 F.2d at 1577 (citing <u>Bivens</u>, 403 U.S. at 396-97, 91 S. Ct. at 2005). The Supreme Court has limited the circumstances under which a <u>Bivens</u> claim may be asserted and has held:

> When the design of a Government program suggests that Congress has provided what it considers to be adequate remedies for constitutional violations that may occur in the course of the program's administration[, we have not created additional Bivens remedies].

<u>Schweiker v. Chilicky</u>, 487 U.S. 412, 423, 108 S. Ct. 2460, 2468 (1988).

Although this circuit has "recognized that the comprehensive statutory scheme established by Congress relating to federal employment (CSRA) precludes the maintenance of job-related <u>Bivens</u> actions by federal employees," <u>Stephens</u>, 901 F.2d at 1577, this case presents the court with a novel issue:  whether a federal employee for whom the CSRA provides <u>no</u> administrative or judicial review for adverse personnel actions can assert a <u>Bivens</u> claim for

7

monetary damages against individual defendants who allegedly have violated the complainant's constitutional rights.  We hold that the CSRA precludes a _Bivens_ remedy in this case notwithstanding the fact that the CSRA does not provide administrative or judicial review of the adverse personnel action.

Lee relies almost exclusively on _Davis v. Passman_, 442 U.S. 228, 99 S. Ct. 2264 (1979), in support of his argument that he should be afforded a _Bivens_ remedy here.  His reliance is misplaced.  In _Davis_, the federal-employee plaintiff, who was not protected by Title VII, brought a _Bivens_ action for workplace discrimination.  The Supreme Court held that a _Bivens_ action was permissible because there was "no evidence . . . that Congress meant § 717 [of Title VII] to foreclose alternative remedies available to those not covered by the statute."  _Davis_, 442 U.S. at 247, 99 S. Ct. at 2278.  The Court noted that "[f]or Davis, as for Bivens, 'it is damages or nothing.'"  _Id._ at 245, 99 S. Ct. at 2277. As an initial matter, the _Davis_ Court did not consider the effect of the CSRA on Davis's _Bivens_ claim because the CSRA had been enacted immediately prior to the ruling and the preemptive effect of the Act was not an issue before the Court.  Furthermore, more recent Supreme Court cases do not reflect the _Davis_ Court's willingness to recognize a _Bivens_ claim in instances where there is a clear congressional intent to exclude certain classes of employees from a statute's comprehensive remedial scheme, as is the

8

case with the CSRA.  For example, in <u>Bush v. Lucas</u>, 462 U.S. 367, 388, 103 S. Ct. 2404, 2416 (1983), the court stated:

> Given the history of the development of civil service remedies and the comprehensive nature of the remedies currently available, it is clear that the question we confront today is quite different from the typical remedial issue confronted by a common-law court.  The question is not what remedy the court should provide for a wrong that would otherwise go unredressed.  It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue.

<u>Accord</u> <u>United States v. Fausto</u>, 484 U.S. 439, 108 S. Ct. 668 (1998).

We recognize that this case is troubling because plaintiff was not afforded a congressionally enacted judicial or administrative procedure through which to vindicate the alleged constitutional wrong.  Since the creation of the <u>Bivens</u> cause of action, however, the Court has "responded cautiously to suggestions that <u>Bivens</u> remedies be extended into new contexts," <u>Schweiker v. Chilicky</u>, 487 U.S. 412, 421, 108 S. Ct. 2460, 2467 (1988), and specifically has held that the exclusion of certain classes of employees from the remedies provided by the CSRA reflects not congressional silence from which courts may imply that an excluded employee is "free to pursue whatever judicial remedies he would have had before enactment of the CSRA," <u>Fausto</u>, 484 U.S. at 447, 108 S. Ct. at 673 (considering CSRA's effect on the Tucker Act), but rather congressional intent to <u>deny</u> the excluded employee specific

9

protections otherwise afforded by the Act, see id.  In light of Congress's deliberate exclusion of certain employees from the protections of the CSRA and this country's long-respected separation of powers doctrine, courts should be hesitant to provide an aggrieved plaintiff with a remedy where Congress intentionally has withheld one.

Although "[n]o Supreme Court opinion holds squarely that the CSRA always prevents federal employees from bringing Bivens actions to right job-related wrongs," Saul v. United States, 928 F.2d 829, 836 (9th Cir. 1991), at least three courts of appeals have held that "the CSRA precludes even those Bivens claims for which the act prescribes no alternative remedy," Saul, 928 F.2d at 840.  See id. (holding that "the CSRA is a special factor counseling against recognition of a Bivens remedy"); Lombardi v. Small Business Admin., 889 F.2d 959, 961 (10th Cir. 1989) ("The recent Supreme Court cases of Fausto . . . and in particular the most recent Chilicky case . . . indicate that the Court will not create a Bivens remedy in a Federal employment action even if no remedy at all has been provided by the CSRA."); Volk v. Hobson, 866 F.2d 1398, 1403-04 (Fed. Cir.) ("Whether or not an employee has access to all of the procedures and remedies of the CSRA . . . , it illustrates the logic inherent in the Supreme Court's admonitions to leave the federal personnel system to Congress[, which is in a] far better position to set the policy and adjust the system than

10

judges confronting ad hoc situations and trying to fill perceived gaps in the program by allowing employees to prosecute Bivens suits against each other."), cert. denied, 490 U.S. 1092 (1989); see also Mitchum v. Hurt, 73 F.3d 30, 35 (3d Cir. 1995) (holding that the CSRA does not prevent award of injunctive relief, but implying that the Act is a special factor militating "against the creation of a new nonstatutory damages remedy"). No circuit has held to the contrary.[4]

We agree with the Ninth Circuit's conclusion that "[t]he CSRA's comprehensive remedial provisions convince us that there was no inadvertence by Congress in omitting a damages remedy against supervisors whose work-related actions allegedly violate a subordinate's constitutional rights," Saul, 928 F.2d at 840, and accordingly hold that the CSRA is a special factor counseling against recognition of a Bivens suit here. In light of the comprehensive nature of the CSRA and the Supreme Court's conclusion that the exclusion of certain employees from judicial review of adverse personnel decisions reflects "manifestation of a considered

---

[4] We recognize that the Eighth Circuit recently held that a local EEO Plan is not a special factor counseling hesitation and therefore allowed plaintiff's Bivens claim to proceed. See Duffy v. Wolle, 123 F.3d 1026, 1033 (8th Cir. 1997), cert. denied, 118 S. Ct. 1839 (1998). It appears that the defendants in Duffy never suggested that the CSRA preempted plaintiff's claim, but rather argued only that plaintiff's Bivens claim should have been dismissed because the local EEO Plan provided plaintiff with a remedy. Because the Eighth Circuit did not address the CSRA's effect on Duffy's Bivens claim, Duffy is not instructive here.

11

congressional judgment," Saul, 928 F.2d at 840, plaintiff is precluded from asserting a Bivens claim in an attempt to recover damages for the constitutional violations alleged here.

III.

Lee contends, without citing supporting authority, that the district court also erred in holding that "§ 1981 does not support a cause of action for claims of employment discrimination arising under color of federal law." We review de novo the district court decision to dismiss the claim. See McKusick v. City of Melbourne, 96 F.3d 478, 482 (11th Cir. 1996). Because we agree with the district court's conclusion that Lee's allegations of discrimination cannot support a claim under § 1981, we affirm the dismissal of that claim.

Both circuit precedent and the text of § 1981 compel us to hold that a plaintiff cannot maintain a § 1981 claim against a federal defendant acting under color of federal law. Prior to the Civil Rights Act of 1991, this court had held that a "suit against the federal defendant acting solely under color of federal law could not have been brought pursuant to any of the statutes enumerated in [42 U.S.C.] § 1988." Martin v. Heckler, 773 F.2d 1145, 1152 (11th Cir. 1985) (emphasis in original). Section 1981 is one of the statutes enumerated in § 1988. See 42 U.S.C. § 1988(b). Through the Civil Rights Act of 1991, Congress amended §

12

1981 and added subsection (c), which provides that "[t]he rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of state law." 42 U.S.C. § 1981(c). Accordingly, the language of § 1981 is clear: Section 1981 provides a cause of action for individuals subjected to discrimination by private actors and discrimination under color of state law, but does not provide a cause of action for discrimination under color of federal law.[5] Because we find no basis for Lee's argument that § 1981 should afford him relief, we affirm the district court's dismissal of that claim.

## IV.

Accordingly, we AFFIRM the district court's order dismissing

---

[5] We are unaware of any court that has held otherwise. Cf. Espinueva v. Garrett, 895 F.2d 1164, 1165 (7th Cir.) ("Section 1981 does not apply to employment discrimination cases involving the federal government . . . ."), cert. denied, 497 U.S. 1005 (1990); Williams v. Glickman, 936 F. Supp. 1, 4 (D.D.C. 1996) ("Weighing the inconclusive legislative history and the statute's general statement of purpose against plain, unambiguous statutory language, the Court must apply the plain language of the statute and dismiss plaintiffs' § 1981 claim because the plaintiffs do not allege impairment of rights by nongovernmental discrimination or impairment under color of state law."); Carlton v. Ryan, 916 F. Supp. 832, 838 (N.D.Ill. 1996) (stating that "§ 1981 does not apply to the federal government"); La Compania Ocho, Inc. v. U.S. Forest Serv., 874 F. Supp. 1242, 1250-51 (D.N.M. 1995) (noting that "section 717 of Title VII constitutes the exclusive remedy for federal government discrimination in the employment context," but holding that § 1981 applies against the federal government for non-employment racial discrimination).

13

Lee's claims for damages under <u>Bivens</u> and 42 U.S.C. § 1981.[6]

---

[6] We note that the district court was incorrect to conclude that it lacked subject matter jurisdiction, but was correct to dismiss for failure to state a claim. <u>See</u> <u>Bell v. Hood</u>, 327 U.S. 678, 682-83, 66 S. Ct. 773, 776 (1946). We therefore affirm the district court's judgment. <u>See</u> <u>Bonanni Ship Supply, Inc. v. United States</u>, 959 F.2d 1558, 1561 (11th Cir. 1992) ("[T]his court may affirm the district court where the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court.").