[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 08, 2004
THOMAS K. KAHN
CLERK

No. 03-13162

D.C. Docket No. 02-23079-CIV-KMM

JAMES K. HARDISON,

Plaintiff-Appellant,

versus

MICHAEL M. COHEN, individually,
DEPARTMENT OF VETERANS AFFAIRS,
Anthony J. Principi, as Secretary,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Florida

**(July 8, 2004)**

Before ANDERSON, HULL and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

This appeal presents an issue that has divided courts and commentators alike: whether a comprehensive statutory scheme that provides no remedy for a former employee of a federal agency, who contends that his discharge violated the Constitution, bars the former employee from obtaining any monetary or equitable relief. In deference to Congress, we conclude that the statutory scheme bars a claim for monetary damages, but we acknowledge, without deciding the issue, that a serious question remains whether equitable relief is necessarily precluded. We conclude, however, that this employee is not entitled to equitable relief, because he did not have a property interest in the position from which he was removed.

## I. FACTS AND PROCEDURAL HISTORY

On July 1, 2000, Dr. James K. Hardison began a three-year appointment as a medical resident in the podiatric residency program of the Miami Department of Veterans Affairs Medical Center (Medical Center). He was appointed under 38 U.S.C. section 7406, which enables the Secretary of the Department of Veterans Affairs (VA), Anthony Principi, to employ medical residents. On June 14, 2002, Dr. Michael Cohen, who supervises the podiatry residents and is the head of the podiatry department at the Medical Center, fired Hardison from the program. Cohen accused Hardison of various acts of misconduct and poor performance of his medical duties.

2

Hardison attempted to appeal his dismissal. He maintained that regulations of the Medical Center and grievance policies of the Council on Podiatric Medical Education (Council), the accrediting organization for the podiatric residency program, required a pretermination hearing and a posttermination appeal. Cohen denied Hardison's request.

Hardison then sued Cohen, in his individual capacity, and Principi, in his official capacity. Hardison asserted that he had been denied due process of law in violation of the Fifth Amendment. Hardison requested three forms of relief: (1) a declaratory judgment; (2) reinstatement, back pay, and a hearing and appeal regarding any future termination; and (3) money damages.

The district court referred Hardison's suit to a magistrate judge, who issued a report and recommendation that the case be dismissed. One day after the deadline for filing objections to the report and recommendation, Hardison filed a motion for an enlargement of time in which to file objections. That motion was granted. Hardison filed his objections, along with his proposed amended complaint, but again his filing was a day late. The district court adopted the magistrate judge's report and recommendation, denied Hardison's objections as untimely, denied leave to file an amended complaint, and dismissed the pending complaint. The district court reasoned that Title 38 provides the sole remedy for

3

VA employees, and that all judicial remedies are precluded by that statutory scheme.

## II. STANDARD OF REVIEW

Because this appeal arises from the dismissal of a complaint, under Federal Rule of Civil Procedure Rule 12(b)(6), we accept the allegations in the complaint as true and construe them in the light most favorable to Hardison. Hill v. White, 321 F.3d 567, 569-70 (11th Cir. 2003). We review the dismissal of a complaint for its failure to state a claim upon which relief can be granted de novo. Next Century Communications Corp. v. Ellis, 318 F.3d 1023, 1025 (11th Cir. 2003).

## III. DISCUSSION

To determine whether Hardison's complaint failed to state a claim upon which relief can be granted, we must evaluate separately each form of relief he requested. We first turn to Hardison's request for money damages. We then consider his request for equitable relief.

### A. Money Damages under Bivens

Hardison seeks damages from Cohen for his role in Hardison's allegedly wrongful discharge. In support of his claim against Cohen, Hardison argues that damages are available under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, which provides a cause of action against a federal agent who,

while acting under the color of federal law, has violated the constitutional rights of an individual. 403 U.S. 388, 397, 91 S. Ct. 1999, 2005 (1970). Bivens actions are brought directly under the Constitution, without a statute providing a right of action. Bivens involved alleged violations of the Fourth Amendment, but the Court has also allowed Bivens actions for violations of the Due Process Clause of the Fifth Amendment, Davis v. Passman, 442 U.S. 228, 99 S. Ct. 2264 (1979), and the prohibition of cruel and unusual punishment under the Eighth Amendment, Carlson v. Green, 446 U.S. 14, 100 S. Ct. 1468 (1980).

Damages can be obtained in a Bivens action when (1) the plaintiff has no alternative means of obtaining redress and (2) no "special factors counseling hesitation" are present. Stephens v. Dep't of Health & Hum. Servs., 901 F.2d 1571, 1575-76 (11th Cir. 1990), cert. denied, 498 U.S. 998, 111 S. Ct. 555 (1990). Those special factors "include an appropriate judicial deference" toward the will of Congress: "When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies." Schweiker v. Chilicky, 487 U.S. 412, 423, 108 S. Ct. 2460, 2468 (1988).

The Supreme Court has "responded cautiously to suggestions that Bivens

remedies be extended into new contexts. The absence of statutory relief for a constitutional violation, for example, does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation." Chilicky, 487 U.S. at 421, 108 S. Ct. at 2467. In Bush v. Lucas, the Supreme Court refused to allow a federal employee to maintain, under the First Amendment, a Bivens action against the agency for which he worked. 462 U.S. 367, 103 S. Ct. 2404 (1983). The Court reasoned that, although the "existing remedies d[id] not provide complete relief for the plaintiff," id. at 388, 103 S. Ct. at 2417, the statutory remedial scheme was "clearly constitutionally adequate." Id. at 378 n.14, 103 S. Ct. at 2412 n.14. Because "Congress [was] in a better position to decide whether or not the public interest would be served" by a damages remedy, the Bush Court refused to supplement "an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, . . . [with] a new judicial remedy for the constitutional violation at issue." Id. at 388, 103 S. Ct. at 2416-17.

In Chilicky, the Supreme Court again refused to allow a Bivens action for damages to supplement a statutory remedial scheme that did not provide full compensation to injured parties. Chilicky, 487 U.S. at 428-29, 108 S. Ct. at 2470. The Chilicky plaintiffs, whose Social Security disability benefits were wrongfully

terminated, filed suit for damages under Bivens on the ground that they had been denied due process under the Fifth Amendment. The plaintiffs simultaneously pursued administrative remedies for recipients of Social Security benefits, with some success: all of the plaintiffs obtained reinstatement to the program; two obtained full retroactive benefits; and another obtained partial retroactive benefits. Id. at 417, 108 S. Ct. at 2464-65. Although the plaintiffs could not be "fully remedied by the 'belated restoration of back benefits[,]'" the Court held that "Congress is the body charged with making the inevitable compromises" in fashioning remedies for injuries relating to "massive and complex" government programs. Id. at 429, 108 S. Ct. at 2470. The Court declined to allow the plaintiffs to maintain a Bivens action for damages, because the Court found "no legal basis that would allow" a judicially created remedy to supplement the administrative remedy provided by Congress. Id. at 429, 108 S. Ct. at 2471.

In the same term that it decided Chilicky, the Supreme Court, in United States v. Fausto, held that a civil servant excluded from judicial review of a personnel action, under the Civil Service Reform Act of 1978 (CSRA), could not obtain relief under the Back Pay Act. 484 U.S. 439, 455, 108 S. Ct. 668, 677 (1988). The Court explained that "[t]he CSRA established a comprehensive system for reviewing personnel action taken against federal employees." Id. The

7

Court reasoned that the exclusion of the plaintiff from the class of employees entitled to judicial review, under the CSRA, revealed a "considered congressional judgment" that the plaintiff was not entitled to any judicial relief. Id. at 448, 108 S. Ct. at 674.

Following Bush, Chilicky, and Fausto, this Court, in Lee v. Hughes, refused to allow a terminated employee to maintain a Bivens claim for damages against a federal agency. 145 F.3d 1272 (11th Cir. 1998). In Lee, a former probation officer sued his supervisors and alleged that his discharge was racially motivated. Id. at 1273. The officer was excluded from the administrative and judicial review provided by the CSRA, and, therefore, had no statutory remedy for his discharge. Id. at 1274. The Lee Court held that the officer could not bring, under the Fifth Amendment, a Bivens action for damages because his exclusion from the remedies of the CSRA was a "special factor counseling hesitation," which reflected an intent of Congress to afford him no legal relief. Id. at 1277. The Lee Court reasoned that, under "this country's long-respected separation of powers doctrine, courts should be hesitant to provide an aggrieved plaintiff with a remedy where Congress intentionally has withheld one." Id.

Based on our precedent in Lee, Hardison's claim for money damages fails. Hardison was excluded, under Title 38, from the remedial processes afforded to

8

permanent VA employees. Sections 7461 to 7464 of Title 38 establish the disciplinary and grievance procedures that apply to section 7401(1) employees, the definition of which excludes "interns and residents appointed pursuant to section 7406." 38 U.S.C. § 7461(c)(1). Medical residents appointed under section 7406 are not entitled to any of the remedies afforded to permanent, full-time VA medical professionals.

It would thwart the will of Congress to allow Hardison, who is excluded from the remedies of Title 38, to bring a Bivens action for damages, when permanent VA physicians, who are provided limited remedies in Title 38, are not allowed, under Bush, Chilicky, and Lee, to bring a Bivens action. Cf. Berry v. Hollander, 925 F.2d 311 (9th Cir. 1991); Maxey v. Kadrovach, 890 F.2d 73 (8th Cir. 1989); Heaney v. U.S. Veterans Admin., 756 F.2d 1215 (5th Cir. 1985). The Tenth Circuit, in examining the statutory predecessor to section 7461, explained that Congress intended to provide a "summary process by which unqualified physicians previously protected by civil service could be expeditiously separated from service." Franks v. Nimmo, 796 F.2d 1230, 1240 (10th Cir. 1986). Allowing Hardison to seek damages under Bivens would undermine that policy, as it would give greater rights to residents than to permanent VA physicians. The district court, therefore, properly dismissed Hardison's complaint for money

damages.

## B. *Availability of Equitable Relief*

Whether Hardison can state a claim for equitable relief is a closer question. Our sister circuits have reached different conclusions about whether the unavailability of a Bivens action for damages for a federal employee means that he is also barred from obtaining equitable relief for an alleged violation of the Constitution. Although this Court has not squarely addressed that question, two of our precedents can be read to support either of the possible answers. Cf. Stephens v. Dep't of Health & Hum. Servs., 901 F.2d at 1575-76 with Perry v. Thomas, 849 F.2d 484, 484 (11th Cir. 1988) (per curiam).

The Supreme Court has not addressed directly the issue whether a remedial statutory scheme necessarily precludes an action for equitable relief brought by a federal employee. Bush and Chilicky addressed only Bivens actions for damages. Chilicky, 487 U.S. at 428, 108 S. Ct. at 2470 ("The remedy sought in Bush was virtually identical to the one sought by respondents in this case: consequential damages for hardships resulting from an allegedly unconstitutional denial of a statutory right."). "[F]ederal courts have historically had broad authority to fashion equitable remedies[,]" and the Supreme Court has not ruled definitively that Congress has the authority to preclude those remedies. Carlson v. Green, 446

U.S. at 42-44, 100 S. Ct. at 1484-85 (Rehnquist, J., dissenting).

Several of our sister circuits have differed on whether equitable relief is precluded by the presence of a statutory remedial scheme. In Mitchum v. Hurt, the Third Circuit stated that the "power of the federal courts to grant equitable relief for constitutional violations has long been established." 73 F.3d 30, 35 (3d Cir. 1995). The Mitchum court acknowledged, however, that under the reasoning of Bush, a "good argument can be made" that a federal employee subject to a comprehensive remedial scheme "should not be permitted to bypass that scheme by bringing an action under 28 U.S.C. § 1331 and seeking injunctive or declaratory relief." Id. at 34. The Third Circuit nevertheless refused to apply the reasoning of Bush to suits for equitable relief and reasoned "that Congress legislates with the understanding that this form of judicial relief is generally available to protect constitutional rights." Id. at 35.

In Hubbard v. EPA, the District of Columbia Circuit ruled that "the courts' power to impose equitable remedies against agencies is broader than its power to impose legal remedies against individuals." 809 F.2d 1, 11 n.15 (D.C. Cir. 1986) vacated on other grounds & reaff'd by Spagnola v. Mathis, 859 F.2d 223 (D.C. Cir. 1988) (en banc). Although "Congress may limit this power . . . CSRA did not explicitly limit our jurisdiction to enjoin unconstitutional personnel actions by

11

federal agencies." Hubbard, 809 F.2d at 11 n.15. The reasoning of Hubbard was affirmed in Spagnola, in which the court stated, "[T]ime and again this court has affirmed the right of civil servants to seek equitable relief against their supervisors, and the agency itself, in vindication of their constitutional rights." Spagnola, 859 F.2d at 229-30.

The Ninth and Tenth Circuits have held that, under Bush and Chilicky, a comprehensive remedial scheme bars a federal employee from obtaining equitable relief. In Saul v. United States, the Ninth Circuit reasoned, "judicial interference in federal employment is disfavored, whether the employee requests damages or injunctive relief." 928 F.2d 829, 843 (9th Cir. 1991). In Lombardi v. Small Business Administration, the Tenth Circuit explained that the "clear purpose of Chilicky . . . is to virtually prohibit intrusion by the Courts into the statutory scheme. . . . This judicial intervention is disfavored whether it is accomplished by the creation of a damages remedy or injunctive relief." 889 F.2d 959, 961-62 (10th Cir. 1989). The Fourth and Seventh Circuits have acknowledged this division of authority, but have not decided the issue. Bryant v. Cheney, 924 F.2d 525, 528 n.2 (4th Cir. 1991); Paige v. Cisneros, 91 F.3d 40, 44 (7th Cir. 1996).

Commentators have also drawn different conclusions about this issue. Dean Nichol criticizes the Supreme Court for displaying "too strong a hesitancy . . . to

recognize constitutional damages claims." Gene R. Nichol, Bivens, Chilicky, and Constitutional Damages Claims, 75 Va. L. Rev. 1117, 1154 (1989). He argues that "the present juxtaposition of a hesitancy to grant damages awards with a willingness to allow injunctive relief . . . gets the traditional interplay between law and equity exactly backwards. Equitable remedies . . . are normally available only after legal remedies have been demonstrated inadequate." Id. at 1135. Nichol concludes that damages should be available "when either the congressional remedy is inadequate or the decision that the Court is asked to make is committed to another branch of government." Id. at 1153.

Another commentator argues that equitable remedies should be allowed, unless the statutory remedial scheme is "constitutionally sufficient." Elizabeth A. Wells, Note, Injunctive Relief for Constitutional Violations: Does the Civil Service Reform Act Preclude Equitable Remedies?, 90 Mich. L. Rev. 2612, 2645 (1992). Otherwise, deficiencies in remedial schemes would leave "specific classes of federal employees without constitutional protections." Id. Denying the federal courts "the power to review the sufficiency of legislative schemes" and provide equitable relief violates the separation of powers, because the courts are unable to serve "as a check on other branches of government." Id. at 2642. Civil servants, therefore, must "be able to seek equitable relief through the federal courts, or their

constitutional rights may be rendered meaningless." Id. at 2645.

Although some courts of appeals and commentators have read our decision in Stephens v. Department of Health & Human Services as foreclosing equitable remedies in the face of a comprehensive remedial statutory scheme, Mitchum, 73 F.3d at 34; Paige, 91 F.3d at 44; Martin H. Redish & Suzanna Sherry, Federal Courts 874 (4th ed. 1998), we are unpersuaded that this circuit has ruled squarely on the issue for three reasons. First, in Stephens we did not mention any possible distinction between legal and equitable relief. Second, the plaintiff in Stephens was eligible for and took advantage of an administrative remedy. Stephens, 901 F.2d at 1573-74. Had the Stephens plaintiff been left without a remedy, it is not clear that this Court would have found that his equitable claim was barred. Third, Stephens did not discuss Perry v. Thomas, which held that the federal courts "have the power to issue injunctive relief, in appropriate cases, in disputes between the United States and its employees, notwithstanding the existence of administrative remedies." 849 F.2d at 484.

We must resolve this difficult question only if Hardison possessed a property interest in his former position with the Medical Center. Implicit in any claim under the Due Process Clause of the Fifth Amendment is the requirement that the interest threatened be either "life, liberty, or property." U.S. Const.

14

Amend. V. Hardison contends that he has a property interest in his employment as a medical resident, but the word "property" must be given "some meaning." Bd. of Regents v. Roth, 408 U.S. 564, 572, 92 S. Ct. 2701, 2706 (1972). Property interests are not created by the Constitution, but "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Id. at 577, 92 S. Ct. at 2709. Federal law, no less than state law, can provide the rules or understandings that create and define property interests. See Mathews v. Eldridge, 424 U.S. 319, 332, 96 S. Ct. 893, 901 (1976). We must, therefore, examine the federal laws under which Hardison was employed by a federal agency to determine whether those laws reasonably could support a property interest in his residency.

Title 38 gives no support to Hardison's claim that he has a property interest in his former job protected by the Constitution. Hardison was appointed under 38 U.S.C. section 7406, which allows the Secretary of the VA to appoint residents and interns. Section 7406 employees are appointed "without regard to civil service or classification laws, rules, or regulations." Id. § 7406(a)(1). Section 7406 also gives discretion to the Secretary in managing the employment details of residents and interns. Id. § 7406(b), (c). Those employees are denied any right to

appeal an adverse personnel action.  Id. § 7461(c)(1).  Hardison was a temporary employee, and he was appointed under a system that allows employees to be "expeditiously separated from service."  Franks, 796 F.2d at 1240.

Hardison's contention that he has a property interest in his job is similar to the contention advanced by the plaintiffs in Silva v. Bieluch, 351 F.3d 1045 (11th Cir. 2003).  In Silva, the plaintiffs were deputy sheriffs who were demoted from their positions as probationary lieutenants.  Id. at 1046.  Those plaintiffs asserted that their due process rights were violated because they were demoted without a hearing.  Id. at 1047.  This Court concluded that, because their appointments were probationary, the plaintiffs had no property interest.  Id. at 1047-48.  Like the plaintiffs in Silva, Hardison had neither a guarantee of future employment with the Medical Center, nor a statutory right to appeal any adverse personnel action, and he, therefore, cannot prove that he had a property interest in his job at the Medical Center.

Finally, Hardison complains that Cohen violated the grievance policies of the Council, which required that all podiatric residents be afforded a pretermination hearing and a posttermination appeal.  Because Hardison does not and cannot allege that the grievance policies established the exclusive grounds upon which his discharge could be based nor that a podiatry resident could be

16

discharged only for cause, the grievance policies did not create a property interest in Hardison's employment. Zeigler v. Jackson, 716 F.2d 847, 849 (11th Cir. 1983); Ogletree v. Chester, 682 F.2d 1366, 1369 (11th Cir. 1982); United Steelworkers of Am., AFL-CIO v. Univ. of Ala., 599 F.2d 56, 59-61 (5th Cir. 1979). Hardison also did not plead a breach of contract claim, under state law, and at oral argument his counsel conceded that he did not seek relief under state law. This argument, therefore, fails.

Although it did not distinguish between Hardison's requests for legal and equitable relief, the district court properly dismissed Hardison's complaint for both forms of relief. We may, of course, affirm the judgment of the district court on any ground that finds support in the record. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001). As to Hardison's request for equitable relief, we need not decide, as the district court found, that the remedial scheme of Title 38 bars Hardison's claim, because the record establishes that Hardison did not have a property interest in his employment.

## IV. CONCLUSION

Hardison's Bivens claim for money damages is barred by the remedial provisions of Title 38, and because Hardison did not have a property interest in his former position protected by the Constitution, he cannot state a claim for equitable

17

relief. The judgment of the district court, which dismissed Hardison's complaint for failure to state a claim, is

**AFFIRMED.**