# United States Court of Appeals for the Federal Circuit

---

**ALFREDO SEMPER,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

---

2012-5003

---

Appeal from the United States Court of Federal Claims in Case No. 10-CV-616 Judge Marian Blank Horn.

---

Decided: September 7, 2012

---

ANDREW C. SIMPSON, Andrew C. Simpson, P.C., of Christiansted, Virgin Island, argued for plaintiff-appellant.

REGINALD T. BLADES, JR., Assistant Director, Civil Division, Commercial Lititgation Branch, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were STUART F. DELERY, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and DAWN E. GOODMAN, Trial Counsel.

---

Before BRYSON, O'MALLEY, and WALLACH, *Circuit Judges*.

BRYSON, *Circuit Judge*.

## I

Alfredo Semper worked as a probation officer for the District Court of the Virgin Islands until he was removed from his position on August 6, 2010. The reason given for his termination was that he was negligent in the supervision of a convicted defendant who was killed while on release pending sentencing.

Mr. Semper filed a complaint in the U.S. Court of Federal Claims seeking review of his termination. As defendants, he named the United States as well as the Chief Judge of the District Court of the Virgin Islands and the court's Chief U.S. Probation Officer. In his complaint, Mr. Semper asserted that he was "denied Due Process under the U.S. Constitution" and that the defendants violated 18 U.S.C. § 3602(a), which states that a court may remove a compensated probation officer "for cause." Mr. Semper argued that his termination was unjustified and that he was entitled to reinstatement and back pay.

The government argued that the Court of Federal Claims lacked jurisdiction over Mr. Semper's claim. The government noted that, under the Civil Service Reform Act of 1978 ("CSRA"), Mr. Semper was classified as a member of the "excepted service," not the "competitive service," and was not among those excepted service employees whom the statute makes eligible for judicial or administrative review of adverse agency action. Because the CSRA governs the procedural rights of members of both the competitive service and the excepted service, the government argued that Congress's decision to deny any

right to administrative or judicial review to persons such as Mr. Semper for actions such as termination foreclosed him from obtaining review of his termination in other forums, such as the Court of Federal Claims.

The Court of Federal Claims dismissed Mr. Semper's complaint for lack of jurisdiction, but not on that ground. The court found that because Mr. Semper was employed in the Judicial Branch, the CSRA did not apply to him and therefore did not have the effect of foreclosing his access to judicial or administrative remedies. However, the court concluded that it lacked jurisdiction over his claim because he failed to point to any money-mandating statute or regulation that would give him a right to contest his termination before that court.

We agree with the judgment of the Court of Federal Claims but affirm on the reasoning originally advanced by the government below: that because Mr. Semper is a member of the excepted service, the CSRA forecloses his right to seek review of his termination in the Court of Federal Claims.

II

The portion of the CSRA that is codified in Chapter 75 of Title 5 of the United States Code details the procedural protections afforded to government employees who are subjected to certain adverse personnel actions. 5 U.S.C. §§ 7501-7543. The statute provides those procedural protections for only certain adverse actions, including removal, suspension for more than 14 days, and reduction in pay or grade. *Id.* § 7512. In disputes involving those actions, the CSRA provides for administrative review by the Merit Systems Protection Board ("MSPB"), followed by review by this court.

The statute provides that those procedures are available only to "employees," a term that excludes members of the excepted service who do not satisfy particular eligibility or tenure requirements, and it further excludes certain categories of "employees" from entitlement to the review procedures. *See* 5 U.S.C. § 7511(a)(1) (limiting the definition of "employee" to certain personnel); *id.* § 7511(b) (excluding certain "employees" from the provided procedures).

Under section 7511(a)(1), individuals are considered employees if they fall within one of three categories:

(A) an individual in the competitive service—
  (i) who is not serving a probationary or trial period under an initial appointment; or
  (ii) who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less;
(B) a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions—
  (i) in an Executive agency; or
  (ii) in the United States Postal Service or Postal Regulatory Commission; and
(C) an individual in the excepted service (other than a preference eligible)—
  (i) who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service; or
  (ii) who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less;

Mr. Semper was in the excepted service, not the competitive service. Therefore, he does not fall within section 7511(a)(1)(A). Mr. Semper was not preference eligible.[1] Therefore, he does not fall within section 7511(a)(1)(B). Mr. Semper was not serving a probationary or trial period pending conversion to the competitive service. Therefore, he does not fall within section 7511(a)(1)(C)(i). Finally, although Mr. Semper had completed two years of current continuous service at the time of his termination, his service was in the Judicial Branch and not in a position in an Executive Branch agency. Therefore, he does not fall within section 7511(a)(1)(C)(ii). For those reasons, Mr. Semper does not fall within the statutory definition of an "employee" and therefore is not entitled to the administrative and judicial review procedures prescribed by the CSRA. That raises the question whether Congress's decision not to afford persons in Mr. Semper's position any right of administrative or judicial review under the CSRA forecloses him from obtaining judicial review of his termination by an alternative mechanism, i.e., through an action in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491.

The answer to that question begins with the Supreme Court's decision in *United States v. Fausto*, 484 U.S. 439 (1988). In *Fausto*, an excepted service employee with the federal government challenged his suspension, arguing that it was unwarranted and that he was entitled to pay for the period of his suspension. *Id.* at 442. He filed a complaint in the Claims Court because the CSRA at that time did not allow excepted service personnel who were not "preference eligible" to challenge adverse personnel actions in the MSPB. The Court found that in enacting

---

[1] Preference eligible personnel include certain veterans and some close relatives. 5 U.S.C. § 2108(3).

the CSRA Congress created an elaborate new framework, which replaced the preexisting "patchwork system" with "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. The new statute, the Court explained, "prescribes in great detail the protections and remedies applicable to such [adverse agency] action, including the availability of administrative and judicial review." *Id.* at 443. The Court noted that no provision of the CSRA gives non-preference-eligible members of the excepted service the right to administrative or judicial review. *Id.* The question before the Court in *Fausto*, as in this case, was "whether that withholding of remedy was meant to preclude judicial review for those employees, or rather merely to leave them free to pursue the remedies that had been available before enactment of the CSRA." *Id.* at 443-44.

After analyzing the statutory scheme in some detail, including the exclusion of certain employees from the review procedures, the Court in *Fausto* concluded that the CSRA "displays a clear congressional intent to deny the excluded employees the protections of Chapter 75—including judicial review—for personnel action covered by that chapter." 484 U.S. at 447. In light of the "comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75," the Court regarded the statute as reflecting "a congressional judgment that those employees should not be able to demand judicial review for the type of personnel action covered by that chapter." *Id.* at 448. The absence of any provision for those employees to obtain judicial review, the Court concluded, "is not an

uninformative consequence of the limited scope of the statute, but rather manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by Chapter 75." *Id.* at 448-49. Accordingly, the Court held that where the CSRA covered a specific adverse action, the Claims Court was deprived of jurisdiction to review those actions in cases brought by non-preference-eligible excepted service personnel. *Id.* at 455.

Mr. Semper argues that the reach of the CSRA, and therefore the holding of *Fausto*, is limited to employees of the Executive Branch. Under that view, because he was a Judicial Branch employee, his claim is not subject to the inference that Congress intended to bar persons in his position from recourse to remedies outside the CSRA, and he is therefore free to seek and obtain review from the Court of Federal Claims if he can satisfy that court's standard jurisdictional inquiry. That argument is unpersuasive for several reasons.

First, in considering the effect of the CSRA on the previous "patchwork system," the Court in *Fausto* did not limit its inquiry to employees of the Executive Branch, but instead repeatedly referred simply to "federal employees." 484 U.S. at 443 (noting that the CSRA created "an elaborate 'new framework for evaluating adverse personnel actions against [federal employees]'", quoting *Lindahl v. Office of Pers. Mgmt.*, 470 U.S. 768, 774 (1985)); *id.* at 445 (The CSRA was "designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."); *see also Dotson v. Griesa*, 398 F.3d 156, 170 (2d Cir. 2005) (*Fausto* construed the CSRA's "exclusion of excepted service employees (including judicial branch employees)").

Second, the definitional provisions of Title 5 make clear that the terms "civil service," "competitive service," and "excepted service" are not limited to employees of the Executive Branch. The term "civil service" is expressly defined, for purposes of all of Title 5, to include positions in "the executive, judicial, and legislative branches" of the federal government. 5 U.S.C. § 2101. Similarly, sections 2102 and 2103 of Title 5 define "competitive service" as including "civil service positions not in the executive branch which are specifically included in the competitive service by statute," *id.* § 2102, and "excepted service" as consisting of "those civil service positions which are not in the competitive service or the Senior Executive Service," *id.* § 2103. The explicit reference to non-Executive-Branch positions in section 2102 makes clear that the references to the competitive service and the executive service in the CSRA are not limited to Executive Branch personnel. Therefore, Mr. Semper falls within section 2103's definition of an excepted service employee, and the Supreme Court's analysis in *Fausto* applies directly to him without regard to the branch of government in which he served.[2]

---

[2]   Mr. Semper points out that sections 2101 through 2103 of Title 5 were not enacted as part of the CSRA, but were part of Title 5 before the enactment of the CSRA. While that is true, it does not advance his argument that the CSRA has no application to employees outside of the Executive Branch. By using terms in the CSRA that were previously defined in Title 5, Congress adopted those definitions as if they had been included for the first time in the CSRA. Indeed, if definitional sections 2101 through 2103 had not been in Title 5 before the enactment of the CSRA, Congress would have had to include them to provide definitions for the terms "civil service," "competitive service," and "excepted service."

Finally, amendments that Congress made to the CSRA following the Supreme Court's *Fausto* decision add further support to the inference that Congress did not intend to limit the preclusive effect of the CSRA to only Executive Branch employees. In response to *Fausto*, Congress enacted the Civil Service Due Process Amendments, Pub. L. No. 101-376, 104 Stat. 461 (1990). That statute extended MSPB review rights to non-preference-eligible employees in the excepted service, but only within strict limits. Those employees given a right of review included "an individual in the excepted service (other than a preference eligible) . . . who has completed 2 years of current continuous service in the same or similar positions in an Executive agency." *Id.*, codified at 5 U.S.C. § 7511(a)(1)(C)(ii). Having carefully limited the new right of review to certain excepted service employees in the Executive Branch, it seems unlikely that Congress envisioned that excepted service employees who did not qualify under the extended coverage would be entitled to

---

Mr. Semper also argues that the government's contention that the CSRA forecloses actions by Judicial Branch employees in the Court of Federal Claims challenging adverse agency actions of the type covered by the CSRA would invalidate internal administrative remedies devised by Judicial Branch agencies to deal with their employees' employment-related complaints. But Congress's decision to foreclose civil service employees in the excepted service from challenging adverse employment actions in the Court of Federal Claims does not in any way suggest that Congress sought to bar the judiciary from devising administrative remedies for employees within the Judicial Branch, any more than the CSRA would bar an Executive Branch agency from implementing additional procedural protections for its employees within the agency beyond the procedural protections and review provisions created by the CSRA.

litigate their employment-related claims before the Court of Federal Claims.

Later the same year, Congress enacted the Administrative Office of the United States Courts Personnel Act of 1990, Pub. L. No. 101-474, 104 Stat. 1097. In that Act, Congress closed a loophole in the statutory scheme that had granted CSRA review rights to certain employees of the Administrative Office of the United States Courts. *See* H.R. Rep. No. 101-770(I) (1990), *reprinted in* 1990 U.S.C.C.A.N. 1709, 1710. The statute authorized the Administrative Office to create a personnel system that is "free from executive branch controls and more similar to that of the rest of the judicial branch" on the ground that keeping that office subject to Executive Branch oversight of its personnel activities was deemed "contrary to the doctrine of separation of powers." *Id.* Again, it is reasonable to infer from Congress's decision to withdraw CSRA review rights from Judicial Branch employees in the Administrative Office that Congress was acting in accordance with its general purpose not to grant statutory review rights to excepted service employees of the Judicial Branch. There is certainly no indication that upon withdrawing CSRA review rights from those Administrative Office employees, Congress contemplated that they would suddenly gain access to the Court of Federal Claims as a forum in which to adjudicate their personnel claims. *See Dotson*, 398 F.3d 170-71.

Several other circuits have reached the same conclusion that we reach here: that Congress's withholding of CSRA review rights was not inadvertent, and that Congress did not intend for Judicial Branch employees who were not entitled to review under the CSRA to have alternative routes to judicial review for adverse agency actions such as termination. *See Dotson*, 398 F.3d at 169-

71; *Blankenship v. McDonald*, 176 F.3d 1192, 1195 (9th Cir. 1999); *Lee v. Hughes*, 145 F.3d 1272, 1274-75 (11th Cir. 1998). Although those cases did not involve efforts to obtain judicial review from the Court of Federal Claims, the courts in each of those cases interpreted the CSRA, as construed in *Fausto*, as reflecting a congressional intention to deny judicial review of adverse agency actions for Judicial Branch employees in the excepted service and are not eligible for review under the provisions of the CSRA; the courts' analysis in those cases is therefore consistent with the result we reach in this case.

## III

At oral argument, the question was raised whether Mr. Semper could litigate his due process claim in a district court action, either in an action for damages under the *Bivens* doctrine (*see Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)), or by seeking reinstatement, or both. We do not address that issue other than to note that it has been presented to a number of circuits, which have expressed varying views on the issue. *See Dotson v. Griesa*, 398 F.3d 156, 180 (2d Cir. 2005); *Mitchum v. Hurt*, 73 F.3d 30, 36 (3d Cir. 1995); *Saul v. United States*, 928 F.2d 829, 842-43 (9th Cir. 1991); *Lombardi v. Small Bus. Admin.*, 889 F.2d 959, 961-62 (10th Cir. 1989); *Hubbard v. EPA*, 809 F.2d 1, 11 n.15 (D.C. Cir. 1986); *see generally Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126 (2012); *Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Bush v. Lucas*, 462 U.S. 367 (1983). Mr. Semper has informed us that if he is not successful in obtaining review of his dismissal by the Court of Federal Claims, he will pursue his due process claim in a district court action.

Because we conclude that the CSRA "was meant to preclude judicial review" of adverse agency actions by employees in Mr. Semper's position, rather than "merely to leave them free to pursue the remedies that had been available before enactment of the CSRA," *Fausto*, 484 U.S. at 443-44, we affirm the decision of the Court of Federal Claims finding that it lacked jurisdiction over Mr. Semper's complaint. We do not address the question whether the dispute would otherwise be within the jurisdiction of the Court of Federal Claims, an issue on which that court ruled against Mr. Semper.

**AFFIRMED**